LAMBERSON *v.* LOVE.

1. BILLS AND NOTES — ACCOMMODATION MAKER — PRINCIPAL AND
   SURETY.
   Defendant's son defaulted on a bond that plaintiffs had exe-
   cuted with the son as sureties. In order to settle the matter,
   plaintiffs caused defendant to execute his note to the obligee
   named in the son's bond, and they indorsed the paper as
   sureties, the payee indorsing without recourse, and borrowed
   money at a bank on the separate note of the sureties secured
   by defendant's obligation. The sureties were compelled to
   pay their note at maturity and brought action. *Held,* that
   defendant executed the note without consideration to him,
   and as to plaintiffs was an accommodation maker.

2. SAME—EVIDENCE—PAROL.
   Parol evidence is admissible to show the relations and liabili-
   ties of the parties to accommodation paper, and that a per-
   son who is on the face of the paper secondarily liable is in
   fact the principal debtor.

3. SAME—PAYMENT—DISCHARGE.
   Payment by the accommodated party to negotiable paper dis-
   charges it.

Error to Kalamazoo; Knappen, J. Submitted Febru-
ary 20, 1911. (Docket No. 28.) Decided May 8, 1911.

Assumpsit by Charles A. Lamberson and James C.
Bogard against Charles M. Love. A judgment for de-
fendant on a verdict directed by the court is reviewed by
plaintiffs on writ of error. Affirmed.

*Frost & Farrell,* for appellants.

*Jackson & Fitzgerald,* for appellee.

McALVAY, J. Plaintiffs were guarantors or sureties
for one George Love to secure the faithful performance of
a certain contract between him and a medical company,
which had agreed to furnish him as its salesman certain
medicines, extracts, etc., upon certain terms and condi-

tions, and for which he agreed to pay in time and manner provided in the written contract. George Love defaulted in the performance of this contract to the amount of $680.41. Later suit was brought against him and his sureties upon this contract to recover this amount. George Love left for parts unknown. He is the son of the defendant. Plaintiffs undertook no defense to the suit against them. After it was begun they interviewed defendant for the purpose of being relieved from it and to avoid the payment of the amount claimed, and told him they came to find George, and that he was short about $700, and they had been called upon to settle. One of them mentioned the fact that George had made himself liable to arrest. Later, on September 30, 1908, the company's agent, Hunter, came to Kalamazoo. One of the plaintiffs called defendant by telephone telling him that fact, and that he (plaintiff) wanted to get the matter settled and wanted defendant to pay it. The same day plaintiffs and the agent drove to defendant's farm for the purpose of getting this obligation upon which suit had been brought, out of the way. After some talk it was agreed that, if defendant would give a note for $600, plaintiffs would sign it as sureties, and a note for that amount was drawn up by the agent payable to him, and was signed by the parties as agreed. Plaintiffs signed on the back "as sureties." The next morning plaintiffs met Hunter at the bank. They borrowed $600 on their four months' note, giving the money to Hunter; he having turned over to them the note executed the day before. This note they put into the bank as collateral to their note. Hunter also surrendered to them the contract with George Love upon which suit had been brought, and that suit was discontinued. Plaintiffs' note at the bank was renewed from time to time until the note signed by defendant came due, which he upon demand refused to pay, and they were then called upon to pay their indebtedness. After such payment they brought this suit. This note reads as follows:

"600.00.

"TEXAS, KALAMAZOO COUNTY, MICH.,
"Sept. 30, 1908.

"On or before one year after date, I promise to pay to R. A. Hunter or order six hundred dollars with interest at the rate of six per cent. annually from date. Value received.

"Payable at Kalamazoo, Mich.

"C. M. LOVE."

With following indorsements on back:

"As sureties,
    "C. A. LAMBERSON,
    "J. C. BOGARD."
        "Without recourse on me.
            "R. A. HUNTER."

At the close of plaintiffs' case, defendant moved for an instructed verdict, for the following reasons:

(1) Want of consideration for the note.

(2) That it was in fact plaintiffs' obligation for their benefit.

(3) Defendant was an accommodation maker for plaintiffs' benefit, and, having paid their own obligation, they could not recover from him.

This motion was granted, a verdict for defendant was accordingly returned, and upon it a judgment was entered.

But one question is raised in this court by appellants. They contend that the court erred in directing a verdict.

It is clear that at the time these parties met, and the note in suit was made, defendant was in no way related to or obligated upon the contract with his son George upon which suit had already been brought. It is undisputed that defendant received no consideration when he signed the note. The testimony shows why plaintiffs were there. Lamberson testified:

"It was for the purpose of getting this obligation that we had been sued upon settled, that we went out to Mr. Love's farm."

Plaintiff Bogard testified:

" We went out there for the purpose of getting this settled, and signed this note for the purpose of settling, so as to be relieved from this suit which had been started by the Rawleigh Medical Company. Mr. Love had agreed to settle this before. That was why I went out there; that is after the suit had been started against us. My only interest in this matter was to be relieved from the suit started against us so that we would not have to pay the $680. Mr. Love wanted us to sign the note, but we didn't care about what Mr. Love wanted unless we were relieved from this obligation. Our sole purpose in signing this note was to get relieved from this suit."

The record shows that the note was not signed by defendant at the request of the agent, Hunter, nor upon his agreement to discontinue the suit against plaintiffs. Nor was the money obtained by Hunter at the bank upon the note in suit.

Plaintiffs at the bank borrowed $600 on their note, paid it to Hunter, who indorsed the note to them without recourse, und surrendered to them their obligation to his company. These facts have been repeated to make clear the relations between the parties to this suit upon the note plaintiffs have paid. It is clear to us that this transaction was for their benefit. The consideration was moving to them. Their liability was reduced $81, and the suit was discontinued. In paying their note at the bank, they paid their own obligation. It follows that defendant upon this note was an accommodation maker for their benefit. This is shown by the evidence.

The weight of authority is that the relations and liabilities of the parties to accommodation paper may be shown by parol evidence, and it may be shown that a person who is apparently liable only secondarily on the instrument is in fact the principal debtor. 1 Am. & Eng. Enc. Law (2d Ed.), p. 343.

It is settled law that the payment of accommodation paper by the party accommodated discharges the instrument. This is also now the express provision of our negotiable instruments law. Act No. 265, Public Acts 1905, § 121.

It follows that plaintiffs acquired no right of action against defendant, for as between them there was no consideration.

The trial court was not in error in directing a verdict for defendant.

The judgment is affirmed.

BIRD, HOOKER, MOORE, and STONE, JJ., concurred.